NORTH SHORE VOCATIONAL REGIONAL SCHOOL DISTRICT *vs.*
CITY OF SALEM.

Essex.   May 9, 1984. — November 20, 1984.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Statute,* General or special law, Repeal. *Proposition 2½. School and School
Committee,* Regional school district.

General Laws c. 71, § 34, and c. 59, § 20A, as appearing in §§ 7 and 12, re-
spectively, of St. 1980, c. 580 (Proposition 2½), did not repeal by
implication the financial provisions of St. 1972, c. 545, the act creating
the North Shore Vocational Regional School District, and consequently
the city of Salem was required to appropriate and pay to the district the
amount certified by the district treasurer as the city's share of the mainte-
nance and operating costs of the regional high school during the district's
1982 fiscal year. [358-360]

CIVIL ACTION commenced in the Superior Court Department
on January 13, 1982.

The case was heard by *John L. Murphy, Jr.,* J.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*Mary P. Harrington,* Assistant City Solicitor, for the defend-
ant.

*Peter J. McCue (Philip M. Cronin* with him) for the plaintiff.

O'CONNOR, J. North Shore Vocational Regional School Dis-
trict (district) filed a complaint against the city of Salem (city)
in the Superior Court under G. L. c. 231A, seeking a declaration
that the city was required to appropriate and pay to the district
the amount certified to the city by the district treasurer as the
city's share of the maintenance and operation costs of the North
Shore Vocational Regional High School during the district's
fiscal 1982. After hearing the parties on a statement of agreed
facts, a judge entered a judgment declaring that the city is obli-

gated under St. 1972, c. 545, § 8, to "appropriate or pay from available funds the entire amount certified to it by the treasurer of the North Shore Vocational Regional School District." The judge ordered the city to "forthwith appropriate or pay to the District the sum of $77,646.00, with interest." We interpret "appropriate or pay" to mean "appropriate *and* pay." No contrary contention has been made by either party. The city appealed, and the district, disagreeing with part of the judge's reasoning, cross appealed. We transferred the case from the Appeals Court to this court on our own motion. Although we disagree with that part of the judge's reasoning that is challenged by the district, and agree with the district's reasoning, we affirm the judgment of the Superior Court.

We summarize the facts. The district was created pursuant to St. 1972, c. 545, by fifteen municipalities, including the city, accepting that statute and entering into an agreement as provided therein. The district operates the North Shore Vocational Regional High School located in Beverly. In keeping with the agreement, on January 22, 1981, the district school committee adopted an operating and maintenance budget for fiscal 1982, which commenced on July 1, 1981. The budget was in the aggregate amount of $1,660,912. Also pursuant to the agreement, the budget amount was apportioned among the member municipalities in accordance with the number of students from each municipality enrolled at the school on October 1, 1980, and by letter dated January 29, 1981, the district treasurer certified to each member municipality the portion of the budget for which it was responsible. The city's certified share was $271,751. In August, 1981, the district school committee reduced the budget by $2,545, and the district treasurer recertified the city's share for fiscal 1982 to be $271,342. The city's certified share for fiscal 1981 had been $233,369.

On June 17, 1981, the city appropriated and thereafter paid $193,696 for the support of the regional school for fiscal 1982, which was $77,646 less than the amount certified to it by the district treasurer and 17% less than the city had appropriated for the support of the regional school for the district's fiscal 1981. The city's total budget for its fiscal 1982 also was reduced

by 17% from its fiscal 1981 budget. The over-all reduction was required if the city was to comply with St. 1980, c. 580, commonly known as Proposition 2½. In reliance on §§ 7 and 12 of that act, the city advised the district that the city would not make any payments in excess of the $193,696 that it had appropriated for the district's fiscal 1982, and it has not done so.

Statute 1972, c. 545, was a special act of the Legislature enabling the district to come into existence. St. 1972, c. 545, § 8, which is set forth in full in the margin,[1] authorized the district school committee to apportion its costs of maintenance and operation among its member municipalities in accordance with the municipalities' agreement. Such an agreement is a prerequisite to membership in the district. St. 1972, c. 545, §§ 3 and 5. The agreement provided that those costs would be apportioned among the member municipalities on the basis of their respective pupil enrollment in the regional school. The statute provides that the apportioned amounts shall be certified by the district treasurer to the treasurers of the several municipalities, that "[e]ach municipality shall appropriate the amounts so certified" and that the "city or town treasurer . . . shall pay the amount so appropriated . . . to said district at the time or times specified in the agreement." *Id.* at § 8.

---

[1] Statute 1972, c. 545, § 8, provides: "The regional district school committee shall annually determine the amounts necessary to be raised to maintain and operate the district school or schools during the ensuing calendar year, and the amount required for payment of debt and interest incurred by the district which will be due in the said year, and shall apportion the amount so determined among the several municipalities in accordance with the terms of the agreement. The amounts so apportioned for each municipality shall, prior to December thirty-first in each year, be certified by the regional district treasurer to the treasurers of the several municipalities. Each municipality shall appropriate the amounts so certified, and in case any such municipality fails to pay over to the treasurer of said district the amount of its apportionment within the time specified in said agreement for such payment, the district school committee shall invoke the provisions of section thirty-four of chapter seventy-one of the General Laws. The city or town treasurer, as the case may be, shall pay the amount so appropriated or any amount ordered to be assisted by court decree to said district at the time or times specified in the agreement."

Statute 1980, c. 580, known as Proposition 2½, enacted by the people through the initiative process, limits State and local taxation and expenditures. Section 7 of that statute amended G. L. c. 71, by striking out § 34 of c. 71, and inserting in its place the following: "*Section 34.* Every city and town shall annually provide an amount of money sufficient for the support of the public schools *as required by this chapter,* provided however, that no city or town shall be required to provide more money for the support of the public schools than is appropriated by vote of the legislative body of the city or town" (emphasis added). Subsequent amendments to G. L. c. 71, § 34, are irrelevant to this case.

Statute 1980, c. 580, § 12, amended G. L. c. 59 by adding § 20A, to provide in relevant part: "No county, district, public authority or other governmental entity authorized by law to assess costs, charges or fees upon cities or towns may increase the total of such costs, charges or fees with respect to any city or town in any fiscal year by more than four percent over the total of such costs, charges or fees for such city or town for the preceding fiscal year." General Laws c. 59, § 20A, as appearing in St. 1981, c. 782, § 9, provides: "No county, district, including the metropolitan district commission, public authority, the commonwealth or other governmental entity authorized by law to assess costs, charges or fees upon cities and towns, *except regional school districts,* may increase the total of such costs, charges or fees by more than the sum of: (1) two and one-half per cent of the total of such costs, charges or fees over the preceding fiscal year; and (2) any increases in costs, charges or fees for services customarily provided locally or for services subscribed to at local option" (emphasis added).[2] As a result of St. 1981, c. 782, § 9, which became effective January 14, 1982, it is clear that after fiscal 1982, G. L. c. 59, § 20A, has not imposed a cap on the amount that the district may certify to a municipality as its share of the district's costs. However, no contention is made that the present

[2] General Laws c. 59, § 20A, was further amended by St. 1982, c. 550, § 1, adding regional water districts and regional sewer districts to the entities excepted from its reach.

controversy involving fiscal 1982, which commenced July 1, 1981, is controlled by St. 1981, c. 782, § 9.

The city contends that St. 1980, c. 580 (Proposition 2½), §§ 7 and 12, impliedly repeal St. 1972, c. 545, § 8. It first argues that G. L. c. 71, § 34, as appearing in St. 1980, c. 580, § 7, limits the amount of money a city or town must provide for the support of public schools to the amount appropriated for that purpose by vote of the legislative body of that city or town. Arguing that the regional school is a public school, which, no doubt it is, the city concludes that it cannot be required to contribute more to the district than the amount its city council appropriated for that purpose. We reject the city's argument, as did the judge in the Superior Court. General Laws c. 71, § 34, by its terms provides for support of public schools "as required by [c. 71]," with the proviso that the amount of support necessary for that purpose shall be within the discretion of municipal legislative bodies. General Laws c. 71 does not require support for the regional school in question, and therefore the proviso in § 34 does not relate to the city's obligation to support it. Support for the district school is required only by the special act that gave it its existence, St. 1972, c. 545, and by the agreement the district members entered into pursuant to that act.

Well recognized principles of statutory construction also defeat the city's G. L. c. 71, § 34, argument. The city would have us hold that G. L. c. 71, § 34, as appearing in St. 1980, c. 580, § 7, impliedly repealed St. 1972, c. 545, § 8. "Such repeals have never been favored by our law. Unless the prior statute is so repugnant to and inconsistent with the later enactment that both cannot stand, then the former is not deemed to have been repealed." *Commonwealth* v. *Hayes*, 372 Mass. 505, 511 (1977), quoting *Commonwealth* v. *Bloomberg*, 302 Mass. 349, 352 (1939). *Colt* v. *Fradkin*, 361 Mass. 447, 449-450 (1972). *Haffner* v. *Director of Pub. Safety of Lawrence*, 329 Mass. 709, 713-714 (1953). That principle has particular force in the context of a special statute, such as St. 1972, c. 545, followed by a general statute such as St. 1980, c. 580, § 7, amending G. L. c. 71, § 34. "[S]trong terms are

required to show a legislative intent to supersede by a general act a special act . . . ." *Haffner, supra* at 714. See *School Comm. of Boston* v. *Boston*, 383 Mass. 693, 700 (1981).

These principles have been developed in cases involving successive statutes enacted by the Legislature. However, they are equally valid when the later statute is an initiative measure. See 1A C. Sands, Sutherland Statutory Construction § 23.23 (4th ed. 1972). In the absence of irreconcilable conflict between an earlier special statute and a later general one the earlier statute will be construed as remaining in effect as an exception to the general statute. See 1A C. Sands, Sutherland, *supra* at § 23.15. There being no irreconcilable conflict, we view St. 1972, c. 545, § 8, as constituting an exception to G. L. c. 71, § 34, as appearing in St. 1980, c. 580, § 7. The latter statute simply does not apply to the district. If we were to hold otherwise, the district's scheme for financing fiscal 1982, to which the district members agreed, would be inoperative and without an effective substitute. We do not believe that the people intended such a result.

The city's second argument is that G. L. c. 59, § 20A, added by St. 1980, c. 580, § 12, prohibits the district from requiring the city to contribute for the district's fiscal 1982 more than 4% in excess of the city's contribution for fiscal 1981. The amount certified to the city for fiscal 1982, $271,342, is approximately 16% more than the amount certified for fiscal 1981. The trial judge held that the 4% cap provided by St. 1980, c. 580, § 12, applies, not to the amounts certified to the member municipalities, individually, but to the aggregate amount certified to all the municipalities. The aggregate amount for fiscal 1982 was less than 4% in excess of the total amount certified to the member municipalities for fiscal 1981. The judge concluded, therefore, that although St. 1980, c. 580, § 12, applied to the district, the cap was not exceeded. Accordingly, he declared that the city was required to appropriate and pay the full amount certified to it and he ordered the city to do so.

We agree that the city must appropriate and pay the full amount certified to it. We reach that conclusion, however, by

a different route from that taken by the trial judge. We think that the city's argument that St. 1980, c. 545, § 12, relieves it from contributing to the district for fiscal 1982 more than 4% in excess of what it contributed for fiscal 1981 must fail because of the principles of statutory construction we have discussed in connection with St. 1980, c. 580, § 7. We interpret St. 1980, c. 580, § 12, a statute of general application, and St. 1972, c. 545, § 8, a special statute, harmoniously, by recognizing the special statute as a qualification of or an exception to the general statute. Were we to do otherwise, St. 1980, c. 580, § 12, would leave the district without necessary financing for fiscal 1982, a result surely not intended by the people. We read St. 1981, c. 782, § 9, excepting regional school districts from the scope of G. L. c. 59, § 20A, as reflecting and clarifying the people's earlier intent.

*Judgment affirmed.*