SIDNEY H. CHERNICK vs. CHIEF ADMINISTRATIVE
JUSTICE OF THE TRIAL COURT.

Suffolk. February 8, 1985. — July 24, 1985.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

Public Officer. Retirement. Statute, Construction, Repeal.

General Laws c. 221, § 72, establishing a mandatory retirement age of
seventy for court officers was an exception to the provisions of G. L.
c. 32, §§ 90F and 90G, as appearing in St. 1977, c. 735, and St. 1978,
c. 557, respectively, allowing certain State employees to continue work-
ing after they have reached the mandatory retirement age, and con-
sequently, a court officer who had attained seventy years of age was
not entitled to continue his employment pursuant to §§ 90F and 90G.
[486-488]

CIVIL ACTION commenced in the Superior Court Department
on June 29, 1984.

The case was reported to the Appeals Court by Andrew R.
Linscott, J. The Supreme Judicial Court granted a request for
direct appellate review.

John Ryan, III, for the plaintiff.

Ilene Robinson for the defendant.

O'CONNOR, J. Sidney Chernick is employed by the Com-
monwealth as a court officer in the Hampden County Superior
Court. He is a "member in service" of the State employees'
retirement system as that term is used in G. L. c. 32 (1984
ed.). He is also a veteran. Court officers are classified in Group
1 of the retirement system. G. L. c. 32, § 3 (2) (g). McCarthy
v. Sheriff of Suffolk County, 366 Mass. 779, 780 (1975). The
maximum retirement age for employees in Group 1 is seventy.
G. L. c. 32, § 1. The employment of court officers is also
governed by G. L. c. 221, § 72, which provides in part that

no court officer "shall hold office . . . beyond age seventy years." G. L. c. 221, § 72 (1984 ed.).

In 1977, the Legislature enacted a statute entitled "An Act permitting certain employees to continue working after they have reached the mandatory retirement age." St. 1977, c. 735. The statute amended G. L. c. 32, by inserting a new § 90F. That section provides in pertinent part: "Any member in service, classified in Group 1 shall continue in service, at his option, notwithstanding the fact that he has attained age seventy; provided, however, that he is mentally and physically capable of performing the duties of his office or position. Such member shall annually, at his own expense, be examined by an impartial physician designated by the retirement authority to determine such capability." G. L. c. 32, § 90F (1984 ed.). In 1978, the Legislature enacted a similar statute amending G. L. c. 32, by inserting a new § 90G. St. 1978, c. 557. That section is, in all relevant aspects, identical to § 90F, except that § 90G applies only to veterans.[1]

On or about June 24, 1984, Chernick attained seventy years of age. Pursuant to G. L. c. 32, §§ 90F and 90G, he applied to the State Board of Retirement (board) to be allowed to continue in service past the maximum retirement age of seventy. On or about May 7, 1984, Chernick received notice that the board had approved his continuance in office for one year beyond the maximum retirement age.[2] However, on or about May 29, 1984, the office of the Chief Administrative Justice of the Trial Court informed Chernick that, notwithstanding the decision of the board, he would be retired on June 30, 1984, pursuant to the requirements of G. L. c. 221, § 72.

[1] General Laws c. 32, § 90G (1984 ed.), provides in part: "Any member in service, classified in Group 1, who is a veteran, shall continue in service, at his option, notwithstanding the fact that he has attained age seventy; provided, however, that he is mentally and physically capable of performing the duties of his office or position. Such member shall annually, at his own expense, be examined by an impartial physician designated by the retirement authority to determine such capability."

[2] The record does not indicate whether the board granted Chernick permission to continue working pursuant to § 90F or pursuant to § 90G. Both sections appear to apply equally to Chernick, who is a veteran, and he relies on both sections in support of his right to continue working.

Chernick then brought this action in the Superior Court seeking injunctive and declaratory relief. Specifically, the complaint sought an injunction prohibiting the defendant from requiring him to retire on June 30, 1984, and a declaration of the legal rights of the parties. On July 10, 1984, after a hearing, a judge in the Superior Court granted the plaintiff's motion for a preliminary injunction. On a joint motion by the parties and a stipulation to the material facts, the judge reported the case without decision for determination by the Appeals Court pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted the defendant's application for direct appellate review.

The only issue presented is whether the Legislature, by enacting G. L. c. 32, §§ 90F and 90G, intended to create an exception to the mandatory retirement age for court officers established by G. L. c. 221, § 72. We conclude that the Legislature did not intend to create such an exception.

General Laws c. 32 establishes a contributory retirement system for employees of the Commonwealth. The statute classifies employees in various groups depending upon the nature of their employment, G. L. c. 32, § 3 (2) (*g*), and establishes a maximum retirement age for each group. G. L. c. 32, § 1. Before 1972, there was no specific statutory provision governing the retirement of court officers. As members of Group 1, they were required to retire at age seventy. However, in 1972, the Legislature amended G. L. c. 221, § 72, to establish sixty-five as the mandatory retirement age for court officers. G. L. c. 221, § 72, as appearing in St. 1972, c. 740, § 10.[3] By virtue of that enactment, the mandatory age for court officers' retirement was no longer set by G. L. c. 32.

---

[3] In *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779 (1975), in sustaining the constitutionality of G. L. c. 221, § 72, we said that "[e]xamination of the various groups established by [G. L. c. 32, § 3 (2) (*g*)] discloses a legislative intent to provide for earlier retirement of those government officers concerned with the safety of the public." We recognized that "[c]ourt officers, in their attendance on sessions of the court, may be called upon to protect the court and the public," and that "many court officers are responsible for the custody of prisoners in the criminal sessions." *Id.* at 786-787.

In 1978, the Legislature amended G. L. c. 221, § 72, raising the mandatory age for retirement of court officers to seventy. St. 1978, c. 478, § 252. The Legislature could have accomplished the same result by simply deleting the mandatory retirement age provision in G. L. c. 221, § 72. General Laws c. 32 then would have set the age for court officers' mandatory retirement, as it did prior to 1972. By its 1978 amendment the Legislature continued to employ G. L. c. 221, § 72, and not G. L. c. 32, as the statute governing the mandatory retirement age for court officers, and nothing in the history or language of G. L. c. 32, §§ 90F and 90G, suggests any change in legislative approach.

Section 90F was added to G. L. c. 32 in 1977, prior to the amendment of G. L. c. 221, § 72, which increased the court officers' mandatory retirement age to seventy. When § 90F was added to G. L. c. 32, the mandatory retirement age for Group 1 was seventy, but for court officers it was sixty-five. The language of § 90F, as inserted by St. 1977, c. 735, "Any member in service, classified in Group 1, shall continue in service, at his option, notwithstanding the fact that he has attained age seventy" provided that a physician determines he is capable to do so, could not have referred to court officers, who, by virtue of G. L. c. 221, § 72, were no longer in service at seventy years of age. It is clear that the Legislature did not view § 90F as an amendment to G. L. c. 221, § 72. It is equally clear that the 1978 Legislature did not intend to amend G. L. c. 221, § 72, by adding § 90G to G. L. c. 32. In all material respects, the language of G. L. c. 32, § 90G, tracks G. L. c. 32, § 90F.

We reject Chernick's contention that G. L. c. 32, §§ 90F and 90G, create an exception to G. L. c. 221, § 72. To reach that result, we would have to conclude that the Legislature partially repealed, by implication, the mandatory retirement provision of G. L. c. 221, § 72. "Such repeals have never been favored by our law. Unless the prior statute is so repugnant to and inconsistent with the later enactment that both cannot stand, then the former is not deemed to have been repealed." *North Shore Vocational Regional School Dist.*v.

*Salem,* 393 Mass. 354, 358 (1984), quoting *Commonwealth* v. *Bloomberg,* 302 Mass. 349, 352 (1939). See also *Haffner* v. *Director of Pub. Safety of Lawrence,* 329 Mass. 709, 713-714 (1953). "That principle has particular force in the context of a special statute, such as [G. L. c. 221, § 72], followed by a general statute such as [G. L. c. 32, §§ 90F and 90G]. '[S]trong terms are required to show a legislative intent to supersede by a general act a special act . . . .' " *North Shore Vocational Regional School Dist.* v. *Salem, supra* at 358-359, quoting *Haffner* v. *Director of Pub. Safety of Lawrence, supra* at 714. "Where the later general statute does not present an irreconcilable conflict the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law." 1A C. Sands, Sutherland Statutory Construction § 23.15 (4th ed. 1972).

We conclude, therefore, that G. L. c. 221, § 72, establishing a mandatory retirement age for court officers, is an exception to the provisions of G. L. c. 32, §§ 90F and 90G, and that Chernick is not entitled to continue his employment pursuant to those sections. We remand the case to the Superior Court for entry of a final order consistent with this opinion.

*So ordered.*